IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Criminal Case No. 07-cr-00182-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. AISHA DENISE BAKER,
2. BRICE E. HANNS,
    a/k/a Brice Hans,
3. KENNY K. HARRIS, and
4. MERCURY JAMES SPRINGS,

    Defendants.

## ORDER RESOLVING MOTIONS TO SEVER OR BIFURCATE

**Blackburn, J.**

The matter is before me for consideration and resolution of the following motions: 1) defendant Baker's **Motion for Severance** [#119] filed September 7, 2007;[1] 2) defendant Hanns' **Motion for Severance of Counts (BH-1)** [#108] filed September 7, 2007; 3) defendant Hanns' **Motion for Bifurcated Proceedings Regarding Count One And Count Four of the Superseding Indictment (BH-2)** [#109] filed September 7, 2007; 4) defendant Harris's **Motion To Sever Counts** [#120] filed September 7, 2007; and 5) defendant Springs' **Motion for Severance** [#107] filed September 7,

---

[1] I am cognizant of defendant Baker's **Notice of Disposition** [#175] filed January 14, 2008.

2007.[2] I grant the motions insofar as they seek to sever counts one through three from counts four through eight of the Superseding Indictment [#43]. I deny the motions otherwise.

## I. INTRODUCTION

For various reasons each defendant claims that the counts in which he or she is charged in the Superseding Indictment should be severed from those of the co-defendants. The government does not object to a severance of counts one, two, and three from the remaining counts. However, the government argues cogently that counts one, two, and three should be tried together, as should counts four through eight.

## II. FACTS[3]

**A. Government's Offer Of Proof Of Factual Basis For Counts One Through Three**

On November 15 and 16, 2006, law enforcement agents were monitoring court-approved wiretaps on various phones. Officers heard a defendant in another case, Courtney McCoy, discussing and planning the robbery of Rusty Martinez with defendants, Kenny K. Harris and Brice E. Hanns. McCoy, Harris, and Hanns discussed the time and place they planned to rob Martinez. Police commenced surveillance of McCoy, Harris, and Hanns . Fearing for the safety of Martinez and the community at

---

[2] The government has responded to defendants' motions. *See* [#139 & 140].

[3] The "facts" are those included by the government as its offer of proof in **Government's Consolidated Response to Defendants' Motions To Sever [#107; 108; 119; 120]** [#140] filed October 15, 2007. I used these facts for the limited purpose of resolving the motions addressed in this order.

large, agents dispatched local police to stop the car in which the defendants would be traveling to the planned robbery site.

At approximately 9:30 p.m., on November 16, 2006, Denver Police Department Officers, Dominick Salinas and Jennifer Curtis, observed a Chevrolet Caprice traveling westbound in the 4300 block of W. Colfax Ave. The vehicle had an unreadable temporary tag mounted in the rear window, and the left rear taillight of the vehicle was not operative. Officers Salinas and Curtis followed the vehicle, which was traveling well over the speed limit. Officer Salinas activated the emergency lights and siren to initiate a traffic stop for the traffic violations of unreadable temporary tag, inoperative taillight, and speeding. However, the Caprice did not stop. Instead, after a series of turns, during which the vehicle's driver ignored stop signs and continued to travel at an unreasonably and illegally high rate of speed, the Caprice made a turn northbound in an alley near the 1600 block of Winona Street and skidded to a stop.

Officers Salinas and Curtis saw two black males jump from the vehicle, one from the front passenger door and one from the rear passenger side door. These individuals fled on foot through the yards of neighboring homes.

Sergeant Kevin Carroll observed the two males as they exited the vehicle and saw them both run through the yard of 1635 Winona Ct. When the two males reached the front yard, Sergeant Carroll saw them separate and flee in different directions. Sergeant Carroll pursued one and apprehended him; he was identified as Brice E. Hanns. A short time later, Officer David Martinez and Officer Hans Levens observed a black male in dark clothing running south in a parking lot just north of Colfax Avenue.

He was taken into custody and identified as Kenny K. Harris.

Meanwhile, the Caprice drove off northbound in the alley. Officers Salinas and Curtis followed. The vehicle turned right out of the alley and traveled eastbound on W.17th Ave. The driver eventually came to a stop on 17th Ave east of Meade St. The driver threw his hands in the air. Officers Curtis and Salinas approached the vehicle and verified that the driver was the sole occupant. The driver was identified as Moses Harris, the brother of Kenny K. Harris.

Moses Harris was arrested for felony eluding, and a search incident to arrest was done on the vehicle. The car was registered to Laverne Sweat, 2418 Eliot St, who was later identified as the aunt of Kenny K. and Moses Harris. Inside the vehicle the officers discovered one pair of black knit gloves, two blue knit caps, and one black knit mask.

After the men were apprehended, Denver Police Department Officers began searching the areas through which the suspects had been running, including the yard at 1635 Winona Ct, where Officer Lincoln Simones discovered two handguns: a loaded Springfield XD, .357SIG caliber handgun; and a loaded Ruger P89DC, 9mm handgun. Officer Simones also recovered a loaded magazine, which fit the Springfield XD pistol. Officer Adam Bechthold and Officer Brock Ellerman recovered a black face mask from the alley where the two suspects had exited the Chevrolet Caprice. Officers Damon Bowser and Chuck Porter went to the house at 1635 Winona Ct. and interviewed the owner, John Sims. Sims stated that he did not own the handguns recovered in his backyard, did not know how they got in his yard, and had never seen them before.

Both defendants, Hanns and Harris, had felony convictions that prohibited them from possessing the guns that were dropped in the yard at 1635 Winona Ct.

Further investigation revealed that on August 29, 2006, defendant, Aisha Denise Baker purchased the Ruger pistol that was recovered from the yard of 1635 Winona Ct. She had purchased the gun from L&M Firing Line in Aurora, Colorado. During the purchase, she stated under oath on the ATF Form 4473 (Firearms Transaction Record) that she was purchasing the gun for herself. Instead, Baker purchased the gun knowing that it would be transferred unlawfully to another person. Baker is a known associate of the Rolling 30's Crips gang, and specifically, is an associate of Brice E. Hanns and Kenny K. Harris.

**B. Government's Offer Of Proof Of Factual Basis For Count Four**

On January 22, 2007, at approximately 11:15 p.m., Denver Police Department Officers observed a maroon Cadillac sedan driving westbound on E. 37th Ave. in Denver, Colorado. It was traveling without a headlight and with a broken driver's side mirror. The officers pulled the car over for the traffic violations they had observed and asked the driver, Reginald Griffin, for his driver's license, registration, and proof of insurance. He provided all three, although the proof of insurance was expired. While contacting Griffin, the officers saw that the passenger, later identified as defendant, Brice E. Hanns, had a large, half empty bottle of vodka between his feet. The officers asked Hanns for his name and date of birth. Hanns gave a false name, which came up in officers' computer as "no record found."

When officers approached the car to question Hanns further, he was

unresponsive. Ultimately, a struggle involving Hanns and two or three officers ensued. During the struggle Hanns attempted to flee the scene by repeatedly putting the car into drive and trying to depress the accelerator. Finally, officers were able to get the defendant out of the car and onto the ground. As they placed handcuffs on him, they observed a black handgun lying underneath him at his waist. Officers recovered a loaded, black Glock Model 19, 9mm semiautomatic pistol. Also recovered from defendant's wallet in his pants' pocket was a Colorado Driver's License in the name of Willie Bunch. During contact with defendant later that same day, agents with ATF noticed that Hanns was wearing a pair of distinctive black work boots.

**C. Government's Offer Of Proof Of Factual Basis For Counts Five Through Eight**

The next day, Detective James Anderson, a task force officer assigned to work with ATF, learned from Detective Cole of the Denver Police Department that an armed car jacking had taken place two days earlier on January 20, 2007. The victims, Willie Bunch and Ishalic Diggins, reported that they were taking an acquaintance, Mercury James Springs, and a man that Mr. Springs had claimed was his brother, to a friend's house. During the ride Springs and his "brother" each pulled a gun. Springs pulled the hair of Ms. Diggins and put a silver gun to her head. His "brother" put a black gun to Mr. Bunch's head. The two men then robbed Mr. Bunch of his wallet, which contained his I.D., and cell phone. Mr. Bunch was instructed to remove his boots and leave them with the robbers. Mr. Bunch described the boots as size 11 black boots with laces and having two, silver steel buckles or clasps with a deep cut and a white smudge on the

right toe/forefoot area of the right boot. Ms. Diggins was robbed of her coat and I.D. The two men then drove away in the stolen car. Ms. Diggins immediately called 911 and reported the robbery. During the 911 call she identified one of the robbers as Mercury James Springs. Both victims separately and positively identified Springs as one of the robbers after reviewing photo arrays. On January 25, 2007, after Spring's connection to the crime was determined, Mr. Bunch was shown a photo array containing a photograph of Brice E. Hanns. Mr. Bunch identified Hanns as the other robber.

On January 26, 2007, agents from ATF decided to interview defendant Hanns again. During that contact agents observed Hanns wearing boots matching the description of those stolen from Mr. Bunch. Hanns was wearing black work boots with a deep cut and a white smudge on the toe/forefoot area of the right boot. The agents asked Hanns to remove the boots, which he did, and the agents took the boots into evidence.

### III. ANALYSIS OF MOTIONS TO SEVER

**A. Joint Trials Are Favored**

Defendants charged jointly in an indictment "are not entitled to separate trials as a matter of right. *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984) (internal citations omitted). However, under Fed.R.Crim.P. 14, a court may grant relief if the defendant satifies the substantial burden to show that failure to grant a severance would actually prejudice a particular trial right. However, "Rule 14(a) does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be

granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (internal citations omitted).

In the federal system there is a pronounced presumption in favor of joint trials and against severance; joint trials promote economy and efficiency and serve the interests of justice by avoiding multiple trials and inconsistent verdicts. *Zafiro*, 506 U.S. at 540. As the Supreme Court stated, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'" *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). This strong presumption in favor of joint trials is designed to conserve judicial resources, to alleviate the burdens on citizens serving as jurors, and to avoid the necessity of having witnesses reiterate testimony in a series of trials. *United States v. Kennedy*, 819 F. Supp. 1510, 1516 (D. Colo. 1993) (internal quotations and citations omitted). Joint trials also promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson*, 481 U.S. at 210.

Therefore, in determining the merits of a motion for severance, the court must weigh any prejudice to a particular defendant "against the important considerations of economy and expedition in judicial administration." *United States v. Mabry*, 809 F.2d 671, 681 (10th Cir. 1987); *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989). As a result, "[a] defendant seeking severance carries the burden of establishing clear prejudice if tried with another defendant." *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996); *Cardall*, 885 F.2d at 667-68.

Clear or actual prejudice is a serious risk that a specific trial right would be compromised or that the jury would be prevented from making a reliable judgment as to guilt or innocence. *Zafiro*, 506 U.S. at 539. Defendant "must bear a heavy burden of showing real prejudice to his case" before a severance may be granted. *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir.) Even if such prejudice is shown, however, less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice. *Zafiro*, 506 U.S. at 541.

Further, a "mere allegation" of prejudice or a complaint of a "spillovereffect" from the differing evidence does not constitute "actual prejudice" and does not warrant severance. *United States v. Cardall*, 885 F.2d 656, 667-68 (10th Cir. 1989); *United States v. Wiseman*, 172 F.3d 1196, 1212 (10th Cir. 1999). Likewise, a defendant is not entitled to severance simply because he would have a greater chance of acquittal at a separate trial. *Zafiro*, 506 U.S. at 540; *United States v. Kelley*, 635 F.2d 778, 780 (10th Cir. 1980). Furthermore, even where prejudice is found, less drastic remedies are preferred, such as limiting instructions. *Zafiro*, 506 U.S. at 539; *see, e.g. Cardall*, 885 F.2d at 668; *United States v. Eads*, 191 F.3d 1206, 1209 (10th Cir. 1999). Because of the strong favor in the federal system to conserve judicial resources and avoid multiple trials, a trial should be jointly held, and as a "general rule . . . persons jointly indicted should be tried together." *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir. 1985) *See also, United States v. Peveto*, 881 F.2d 844, 857 n.16 (10th Cir. 1989) (recognizing that "courts generally adhere to the principle that 'those indicted together . . . should be tried together.'").

Here, as to counts one, two, and three, and, separately, as to counts four through eight, the evidence against the defendants is inextricably intertwined. Trying the defendants separately would require several virtually identical trials at needless and prodigal expense of time and resources. The defendants have not borne their heavy burden to overcome the preference for a joint trial. They have not shown that failure to have separate trials would cause actual prejudice to any specific trial right. Likewise, any potential for prejudice here could be easily remedied through limiting instructions.

**B. Analysis Of Defendants' Motions**

    **1. Defendant Kenny K. Harris**

Defendant Harris first asks the court to sever count one from the remaining counts (Harris Motion to Sever, #120, p.2 ¶4). The government does not object to a severance of counts one, two, and three from the other counts. Therefore, counts one, two, and three should be severed from the remaining counts. However, Defendant Harris goes on to request that count four be severed from counts five through eight. This request should be denied.

Defendant Harris advances three arguments. First, he states that he will be prejudiced because he and defendant Hanns will have "mutually antagonistic" defenses. He claims that he and defendant Hanns defendant each will claim that the

firearms belonged to the other.  Second, defendant Harris claims that the evidence for count three – that defendant Baker illegally purchased one of the guns found on November 16, 2006 – is not properly joined with the remaining counts under Fed.R.Crim.P. 8.  Finally, defendant Harris claims that he will be prejudiced due to the spillover effect from the evidence against the other codefendants.  None of these claims has merit.

As to the first claim, again, it is defendant's burden to show actual prejudice if severance were denied.  He has not done so here.  While severance may be necessary if the defenses are "so antagonistic that they are mutually exclusive," *United States v. Esch,* 832 F.2d 531, 538 (10th Cir.1987), severance is not warranted merely where defense theories conflict or because one defendant is attempting to cast blame on the other. *United States v. McClure,* 734 F.2d 484, 488 (10th Cir.1984). (see also *Zafiro,* 506 U.S. at 538) ("Mutually antagonistic defenses are not prejudicial per se.") The defenses truly must be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other. *United States v. Linn,* 31 F.3d 987, 992 (10th Cir.1994) (citing *United States v. Swingler,* 758 F.2d 477, 495 (10th Cir.1985)). Here, rather, defendant Harris would be merely attempting to cast blame on his co-defendant.  A jury accepting Harris' defense of "it isn't mine, it's his" would not be compelled to also reject Hanns' potential defense of "it isn't mine either."  Rather, the jury would be free to reach several conclusions:  that the guns were not possessed by either defendant; that both guns were possessed by only one

defendant; that both guns were possessed by the third person in the car; that each defendant possessed a gun; or that both defendants possessed both guns. Accordingly, defendant Harris has shown no prejudice here, and, thus, severance should be denied. *United States v. Dirden*, 38 F.3d 1131, at 1141 (10th Cir. 1994) (rejecting severance and holding defenses not antagonistic where each defendant claimed the gun and drugs found in the car in which both men were riding belonged to the other).

As to the second claim, it is also without merit. The facts connecting counts one, two, and three are inextricably intertwined; they constitute integral and interconnected parts of a common scheme or plan; and they are parts of the same series of acts or transactions constituting offenses. Fed.R.Crim.P. 8(a), (b).

The government's theory is that defendant Baker purchased the gun because unlike Hanns and Harris, she did not have a felony conviction. She then gave the gun to her known fellow gang members and associates, defendants Hanns and Harris, who could not legally purchase guns due to their felony convictions. Defendants, Hanns and Harris, then together possessed and planned to use the guns in another gang-related crime. Additionally, defendant Baker's purchase of the gun helps explain how defendants, Hanns and Harris, came into possession of at least one of the two guns that they had in their possession on November 16, 2006, especially since defendant Baker is a known fellow gang member and associate of defendants, Hanns and Harris.

Finally, the claim that the defendant will be prejudiced by evidentiary "spillover"

is also without merit. Defendant does not articulate what evidentiary spillover will prejudice him, nor does he explain why a propitious jury instruction would not be sufficient to cure any such prejudice. In any event, the Tenth Circuit and other circuits have repeatedly held that the "unsavory reputation and prior convictions of co-defendants are not grounds for severance." *United States v. Calabrese*, 645 F.2d 1379, 1385 (10th Cir. 1981); *see also, United States v. Iiland*, 254 F.3d 1264, 1270 (10th Cir. 2001). A complaint that one defendant is less culpable than another, that a defendant would have a better chance of acquittal in a separate trial, or that there will be a "spillover" effect of damaging evidence presented against a codefendant, is simply insufficient to warrant severance. *Iiland*, 254 F.3d at 1270. This is true especially where trial courts have given the jury cautionary instructions to consider defendants separately, a remedy readily available here. *See, United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005); *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). As a result, the "drastic remedy of severance" is inappropriate here especially when the risk of prejudice, if any, is balanced against the substantial "expense and inconvenience of separate trials." *Small*, 423 F.2d at 1181; *see also, United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986). Any risk of prejudice here can be easily and readily cured through a cautionary instruction.

**2. Defendant Aisha Denise Baker**

Defendant Baker seeks to have count three severed from all remaining counts. Defendant Baker's sole complaint is that she will be prejudiced because of the "spillover" effect, and because the evidence against her co-defendants is more

"substantial and incriminating" than the evidence against her. (Baker motion to sever, #119, p.2 ¶ 3-4.) For the same reasons as stated above, this is an insufficient basis to sever count three from counts one and two. Accordingly, Baker's motion should be denied.

### 3. Defendant Mercury James Springs

Like defendants Harris and Baker, defendant Springs seeks severance on the grounds that the evidence and charges are more substantial against his codefendants than against him. (Springs Motion To Sever, #107, p.1 ¶ 2) First, I disagree with this characterization, especially since he is named in four counts – five through eight – of the Superseding Indictment. Second, like his codefendants, defendant Springs fails to establish his burden to show actual prejudice to a specific trial right. Accordingly, defendant Springs motion should be denied.

### 4. Defendant Brice E. Hanns

Defendant Hanns advances several arguments. First, he claims that count one should be severed from all other counts. Second, he claims that since count four (the gun possession count) is factually dissimilar from counts five through eight (the car jacking counts), the counts are improperly joined and must be severed. Finally, he argues that failure to sever count four from counts five through eight would be prejudicial because it would reveal to the jury that he has a previous felony conviction. (Defendant Hanns Motion To Sever, #108) All of these arguments are without merit, and his motion should be denied.

#### i. Count One Need Not Be Severed From All Other Counts

Defendant Hanns seeks severance of count one from all other counts in which he is charged. For the same reasons I denied defendant Harris' motion to sever, Hanns' request for severance of count one from counts two and three should be denied also. As I concluded previously, counts one, two, and three are joined properly and should be tried together. Fed.R.Crim.P 8.

### ii. Counts Four And Counts Five Through Eight Are Properly Joined

Defendant Hanns also seeks severance of count four from the remaining counts on the grounds that the evidence that he possessed a gun two days after the car jacking is irrelevant to the car jacking counts. Presumably, this is an argument that count four, the gun possession count, was improperly joined with the remaining car jacking counts under Fed.R.Crim.P. 8. I disagree.

Rule 8(a) of the Federal Rules of Criminal Procedure broadly allows joinder of offenses in three situations: (1) when the offenses are of the same or similar character; (2) when the offenses are based on the same act or transaction; or (3) when the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Fed.R.Crim.P. 8(a). Rule 8 is construed "broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). "Transaction" has a flexible meaning and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Berardi*, 675 F.2d 894, 899-90 (7th Cir. 1982); *See also Roth v. United States*, 339 F.2d 863, 865 (10th Cir.1964). Here, the

evidence is that two days after the defendant held a black gun to a victim's head to carry out a car jacking, he was arrested with a black gun, was in possession of the victim's I.D. and the victim's boots. Not only are these counts of the same character, and are connected together, the evidence that the defendant was caught with a gun and other relevant evidence two days after the car jacking would be admissible at a separate car jacking trial as either *res gestae* or under Fed.R.Evid. 404(b). Here, the counts are properly joined because the offenses are of the same or similar character, and they constitute two concatenated transactions.

Defendant argues also that the count four should be severed. However, severance under Fed.R.Crim.P. 14 is unwarranted unless defendant can show how a specific trial right of his is prejudiced by a joint trial and that less drastic remedies, such as limiting instructions, are insufficient to cure any prejudice. *Zafiro v. United States*, 506 U.S. at 539. This is especially true where, as here, "the relationship of the charges grew out of the defendant's own conduct." *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983).

Defendant argues that these transactions are too factually dissimilar to be admissible under to Fed. R. Evid. 404(b) in separate trials. (Defendant Hanns' motion to sever, #108, p.3, ¶8). This is not the relevant standard; instead, the defendant is required to show actual and irreparable prejudice. *United States. v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992) ("The district court was not required to sever the counts simply because the cumulative effect of evidence of similar misconduct might potentially prejudice the defendant.").

### iii. Defendant's Prior Felony Does Not Warrant Severance

Finally, defendant Hanns argues that count four should be severed because it will prejudice him if the jury learns that he is a convicted felon. He claims also that even if evidence of the defendant's prohibited status is kept from the jury, the government may not admit the firearm because that would constitute impermissible propensity evidence.

In support of his argument that the felon in possession count be severed from the remaining counts, defendant relies on law from the Ninth Circuit. However, the Tenth Circuit disagrees with the Ninth Circuit on this issue. Instead, the Tenth Circuit has held repeatedly that felon in possession counts may be tried with other counts, especially where, as here, the felon in possession counts are factually connected to the other counts due to defendant's own conduct. *United States v. Jones,* 213 F.3d 1253, 1260-61 (10th Cir. 2000); *United States v. Valentine,* 706 F.2d 282, 290 (10th Cir. 1983).

The Tenth Circuit has held consistently that there is no prejudicial joinder where a felon in possession of a gun count is tried at the same time as other counts, including robbery. It has done so on the grounds that jurors are trusted to follow the instructions they are given, namely that they consider the evidence as to each count and each defendant separately. *Jones,* 213 F.3d at 1260-61 (defendant not entitled to severance of felon in possession and robbery counts, especially where the connection between the charges grew out of defendant's own conduct and any potential for prejudice could be remedied by a limiting, curative instruction); *United States v. Sturmoski*, 971 F.2d

452, 460 (10th Cir.1992) (no prejudicial joinder where felon in possession of gun and possession of sawed-off shotgun were tried at the same time); *United States v. Roe*, 495 F.2d 600, 604 (10th Cir. 1974) ("We find no abuse of discretion in the refusal to grant a severance and a joint trial would not affect the right of the accused to testify in his own behalf. The court's instruction limiting the consideration of proof of the previous conviction to the third count, together with similar reference in the general instructions, was adequate to protect the accused from prejudice on the first two counts."); *United States v. Cox*, 934 F.2d 1114, 1119-20 (10th Cir.1991) (felon in possession and drugs); *Valentine*, 706 F.2d at 290 (no abuse of discretion when district court refused to sever felon in possession count from drug charges because the court was "not persuaded that unfair prejudice resulted here since relationship of the charges grew out of the defendant's own conduct."); *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997) (no error in failure to sever firearms counts from drug counts where gun arguably related to drug trafficking scheme.); *United States v. Riblet*, 91 Fed. Appx. 128, *129 (10th Cir. 2004) (unpublished) (felon in possession and drug counts).

To remedy any potential for prejudice, the defendant has the option to stipulate to the fact that he is a previously convicted felon under *Old Chief v. United States*, 519 U.S. 172 (1997). Also, I can instruct the jury that it should consider individually the charges against the defendant and the evidence presented, a remedy repeatedly approved by the 10th Circuit. *See, e.g., United States v. Williams,* 45 F.3d 1481, 1484 (10th Cir. 1995). Accordingly, because defendant Hanns has failed to show why a specific trial right would be prejudiced at a joint trial that cannot be cured by propitious

jury instructions, his motion to sever should be denied.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That defendant Baker's **Motion for Severance** [#119] filed September 7, 2007, is **DENIED**;[4]

2. That defendant Hanns' **Motion for Severance of Counts (BH-1)** [#108] filed September 7, 2007, is **DENIED**;

3. That defendant Hanns' **Motion for Bifurcated Proceedings Regarding Count One And Count Four of the Superseding Indictment (BH-2)** [#109] filed September 7, 2007, is **DENIED**;

4. That defendant Harris's **Motion To Sever Counts** [#120] filed September 7, 2007, is **DENIED**;

5. That defendant Springs' **Motion for Severance** [#107] filed September 7, 2007, is **DENIED**;

6. That pursuant to Fed.R.Crim.P. 14(a), Counts One, Two, and Three of the Superseding Indictment are **SEVERED** for trial from Counts Four, Five, Six, Seven, and Eight of the Superseding Indictment;[5] and

7. That a telephonic setting conference **SHALL BE CONDUCTED** on Tuesday,

---

[4] Because defendant Baker has filed her **Notice of Disposition**, *see* [#175], the motion also could have been denied as moot.

[5] If defendant Baker's **Notice of Disposition**, *see* [#175] filed January 14, 2008, ripens into a plea of guilty that is approved by the court, then Count Three, in which only defendant Baker is charged, will be severed by operation of law from all other counts.

-19-

January 22, 2008, at 11:00 a.m., to set defendant Hanns' **Motion To Suppress Evidence and Statements (BH-4)** [#111] and **Motion To Exclude In-Court Identifications (BH-5)** [#112] for evidentiary hearing(s) and to set a further status-setting conference; provided, furthermore, that counsel for the government shall arrange, schedule, and coordinate the conference call among the court and counsel necessary to facilitate the setting conference.

Dated January 14, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**